LAW OFFICES OF LAWRENCE D. NWAJEI
Lawrence D. Nwajei, Esq. (SBN: 180794)
4221 Wilshire Boulevard, Suite 392
Los Angeles, CA. 90010
Telephone: (323)549-0201
Facsimile: (323)549-0211

THE EKENNA LAW FIRM
Chief Nnamdi A. Ekenna, (SBN: 170392)
4221 Wilshire Boulevard, Suite 392
Los Angeles, CA. 90010-3537
Telephone: (323)549-0201
Facsimile: (323)549-0211

Attorneys for Plaintiff
WENDY WILLIAMS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

► CV 07 1283 ABC (FMOx)

| | |
|---|---|
| Wendy Williams, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Sharp Corporation, Sharp Electronics Corporation Sharp Plaza, LG Philips LCD Company Ltd., LG Electronics USA Inc. 1000 Sylvan Ave., Philips Electronics North America Corp., Samsung Electronics Co., Ltd. Samsung, Toshiba Corporation, Hitachi Ltd.. Hitachi Electronic Devices (USA), Inc., Sanyo Epson Imaging Devices Corporation, NIT Corporation, NEC Electronics America, Inc., IDT International Ltd., International Display Technology USA Inc., AU Optronics Corp., AU Optronics Corporation Americas, Chi Mei Optoelectronics USA, Inc., Chunghwa Picture Tubes Ltd. HannStar Display Corporation,<br><br>Defendants, | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

1

CLASS ACTION COMPLAINT

# CLASS ACTION COMPLAINT

Plaintiff Wendy Williams, individually and on behalf of all others similarly situated, for her complaint against Defendants, upon knowledge as to herself and her own acts, and upon information and belief as to all other matters, alleges the following:

## NATURE OF ACTION

1.  Her first complaint arises from the illegal and anticompetitive conduct of Defendants Sharp Corporation, Sharp Electronics Corporation, LG Philips LCD Company Ltd., LG Electronics USA Inc. and Philips Electronics North America Corp. These Defendants are the leading manufacturers of and in connection with the market for Liquid Crystal Display ("LCD"), which uses Thin-Film Transistor ("TFT") technology (herein known as "TFT-LCD") to improve image quality.

2.  This antitrust class action is brought under Section 1 of the Sherman Antitrust Act, 1 U.S.C. § 1, and for violation of California State consumer protection and antitrust laws. Defendants collectively own and/or control a vast majority share of the market for TFT-LCD's that are available for purchase either as stand alone display units (monitors) and/or in preassembled computers monitors, laptop computers, televisions, cellular telephones, PDAs, and/or personal electronic devices bought from retailers ("TFT-LCD products " and/or "TFT-LCD display units").

3.  Defendants are excluding competition and maintaining their monopoly over TFT-LCD products by colluding and conspiring to fix, raise, maintain, and/or stabilize prices paid by manufacturers of display units based on the Defendants' specifications.

4.  The companies that purchase display units as stand-alone and/or in preassembled units are divided into several categories.

5.  The companies that purchase TFT-LCD display units for laptop computers are Hewlett-Packard, Toshiba, Acer, Dell, and Lenovo. The companies that purchase TFT-LCD display units for desktop monitors are Dell, LG Electronics, Philips Electronics, Hewlett-Packard, and Apple. The companies that purchase display units for flat screen televisions are Philips Electronics, LG Electronics, Toshiba, Hitachi, and Matsushita. The final category of companies that purchase TFT-LCD display units for various other applications are TAGInnotech, Seiko

1  Instrument Inc., Shinco, Action Technology, and Noedis. In addition, Defendants are excluding
2  competition and maintaining their monopoly over TFT-LCD display units by colluding and
3  conspiring to fix, raise, maintain, and/or stabilize prices paid by TFT-LCD display unit resellers.
4  TFT-LCD display unit retailers and resellers in turn pass these supra-competitive prices on to
5  consumers.

6.  Because of Defendants' anticompetitive conduct, Plaintiff paid supra-competitive prices for TFT-LCD display units and/or in preassembled computers bought from retailers.

7.  Plaintiff, on her own behalf and on behalf of the class defined below, seeks to recover for the injuries to herself for her overpayments to Defendants. The Plaintiff also seeks injunctive and declaratory relief and costs, including reasonable attorneys' fees.

8.  In cause of action one of their complaint, Plaintiff: on behalf of herself and all others who are indirect purchasers of TFT-LCD, seeks injunctive relief against Defendants based upon allegations of a conspiracy to restrain trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

9.  Causes of action two and three are brought by Plaintiff seeking damages on behalf of herself and those Class members who indirectly purchased TFT-LCD in California.

10. Cause of action four is brought by Plaintiff on her own behalf and on behalf of the class members from California, seeking a constructive trust and disgorgement of the unjust enrichment of Defendants.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this action's federal claim pursuant to 28 U.S.C. §§ 1331 and 1337. The Court has jurisdiction over this action's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal claims as to form part of the same case and/or controversy. For the state law claims the court also has jurisdiction pursuant to 28 USC §§ 1332(d), in that this is a class action in which the matter of controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and which some members of the proposed class are citizens of a different state than of the Defendants.

12. Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C.

1  § 1391(b) and (c) because some of the Defendants reside, and/or are licensed to do business and/or
2  are doing business, and/or are found and/or transact business, in this district and/or the claims arose
3  in this district.

4  13.  Wendy Williams ("Plaintiff") is a resident and citizen of California. During the
5  class period, Plaintiff purchased a LG cellular telephone from a retailer that is a TFT-LCD flat
6  panel display product. Plaintiff paid artificially inflated prices and was injured thereby.

7  14.  Defendant LG Philips LCD Company Ltd. ("LG LCD") is located in South Korea
8  and was formed in September 1999 as a 50-50 joint venture between Co-Defendants LG
9  Electronics and Philips Electronics. The company's primary place of business is 17th Floor, West
10 Tower, LG Twin Towers, 20 Yoido-dong, Youngdungpo-gu, Seoul, Republic of Korea 150-721.
11 The company sells TFT LCD Products to manufacturers and retailers.

12 15.  Defendant LG Electronics USA Inc. ("LG") has its principal place of business as
13 1000 Sylvan Ave., Englewood Cliffs, New Jersey 07632, and is a 50% owner of the LG Philips
14 LCD Company Ltd.

15 16.  Defendant Philips Electronics North America Corp. ("Philips") is a New York
16 corporation with its principal place of business located in 1251 Avenues of the Americas, New
17 York, New York 10020.

18 17.  Defendants LG and Philips entered into a joint venture named LG LCD on and/or
19 about September 1999. Because of the joint venture, all patents and sales of the TFT-LCD of
20 Defendant were transferred to LG LCD.

21 18.  Defendant Sharp Corporation is a Japanese corporation located in Osaka, Japan.
22 The Company manufactures and sells TFT-LCD products to retailers in this jurisdiction.

23 19.  Defendant Sharp Electronics Corporation is a corporation with its principal place of
24 business located at Sharp Plaza, Mahwah, New Jersey, 07430-2135.

25 20.  Defendant Samsung Electronics Co., Ltd. ("Samsung") is a business entity
26 organized under the laws of South Korea, with its principal place of business at Samsung Main
27 Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. During the class period, Samsung
28 manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

21. Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the class period, Toshiba Corporation manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

22. Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its principal place of business at 6-1 Marunouchi Center Building 13F Chiyodaku, Tokyo, 100-8220, Japan. During the class period, Hitachi Ltd. manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

23. Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and controlled subsidiary of Defendant Hitachi Ltd. and is a business entity with its principal place of business located at 575 Mauldin Road, Greenville, South Carolina 29607. During the class period, Hitachi Electronic Devices (USA), Inc., manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

24. Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson"), a joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd., started operations on October 1, 2004. It combines the liquid crystal display operations of Epson, Sanyo Electric, and Sanyo Group companies Tottori Sanyo Electric Co., Ltd. and Sanyo LCD Engineering Co., Ltd. and mobilizes each company's special fields of miniaturization, high resolution, high definition, and volume production technology." (http://www.sanyo-epson.com/e/company/outlineindex.html). Defendant Sanyo Epson's principal place of business is located at World Trade Center Building 15F, 2-4-1 Hamamatsu-cho, Minato-ku, Tokyo, Japan. During the class period, Sanyo Epson manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

25. Defendant NIT Corporation is a business entity organized under the laws of Japan with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001 Japan. During the class period, NEC Corporation manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

26. Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880

Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville, California. During the class period, NEC manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

27.   Defendant IDT International Ltd. is an entity organized under the laws of Bermuda with its principal place of business located at Block C, 9th Floor, Kaiser Estate Phase 1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong. During the class period, IDT International Ltd. manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

28.   Defendant International Display Technology USA Inc. is a corporation with its principal place of business located at 101 Metro Drive, Suite 510, San Jose, California. Defendant International Display Technology USA Inc. is a subsidiary of Defendant ChiMei Optoelectronics Corporation. During the time period covered by their complaint, Defendant International Display Technology USA Inc. manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

29.   Defendant AU Optronics Corp. is Taiwan's largest manufacturer of TFT-LCD products and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C. During the class period, AU Optronics manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

30.   Defendant AU Optronics Corporation America ("AUOCA") is a wholly owned and controlled subsidiary of Defendant AU Optronics and has its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas. AUOCA has a facility located in San Diego, California. During the class period, AUOCA manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

31.   Defendant Chi Mei Optoelectronics USA, Inc. is a wholly owned and controlled subsidiary of Chi Mei and has its corporate headquarters at 101 Metro Drive Suite 510, San Jose, California. During the class period, Chi Mei Optoelectronics USA, Inc. manufactured, sold and distributed TFT-LCD products to customers throughout the United States.

32.   Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa") is a leading manufacturer of TFT-LCD products and has its global headquarters at 1127 Hopin Rd., Padeh City, Taoyuan,

1  Taiwan, R.O.C. During the class period, Chunghwa manufactured, sold and distributed TFT-LCD
2  products to customers throughout the United States.

3      33.     Defendant HannStar Display Corporation ("HannStar") is a leading manufacturer of
4  TFT-LCD products and has its headquarters at No. 480, Rueiguang Road, 12th Floor, Neihu Chiu.
5  Taipei 114, Taiwan, R.O.C. During the class period, HannStar manufactured, sold and distributed
6  TFT-LCD products to customers throughout the United States.

7      34.     Defendants conduct business throughout the United States and they have purposely
8  availed themselves of the laws of California.

## CO-CONSPIRATORS AND AGENCY

10     35.     Certain other persons, firms, corporations and entities, at this time unknown to
11 Plaintiff, have participated as co-conspirators with Defendants in the violations and conspiracies
12 alleged in their complaint. In order to engage in the offenses charged and violations alleged herein,
13 these co-conspirators have performed acts and made statements in furtherance of the antitrust
14 violations and conspiracies alleges herein.

15     36.     At all relevant times, each Defendant was and is the agent of each of the remaining
16 Defendants, and in doing the acts alleged herein, was acting in within the course and scope of such
17 agency. Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.
18 Defendants, and each of them, are individually sued as participants and as aiders and abettors in the
19 improper acts, plans, schemes, and transactions that are the subject of their complaint. Defendants,
20 and each of them, have participated as members of the conspiracy and/or acted with and/or in
21 furtherance of it, and/or aided and/or assisted in carrying out its purposes alleged in their complaint,
22 and have performed acts and made statements in furtherance of the violations and conspiracy.

## RELEVANT PRODUCT AND GEOGRAPHIC MARKET

24     37.     To the extent necessary, the relevant product market is the market for TFT-LCD
25 products sold as flat panel monitors and/or pre-installed in various computers, flat panel televisions
26 and electronic devices from a retailer and/or display units that were preinstalled in a new unit
27 purchased from a retailer. The relevant geographic market is the entire United States, and/or the
28 state of California (as defined below). At all relevant times, including the present, all Defendants'

1  collective market share in the relevant product and geographic markets is a vast majority of the
2  market share.

### FACTUAL ALLEGATIONS

**A    Background**

38.  The TFT-LCD industry has its origin in the computer and television industry. The TFT-LCD display unit is a necessary component in a computer and/or television. The TFT-LCD display unit is a separate display that is smaller and has a brighter, clearer image than traditional Cathode Ray Tube display units. As the popularity of more media friendly picture and animations increases, the demand for clear view thin display units have increased dramatically.

39.  The Defendants are involved in the design and manufacture of these TFT-LCD display units. The Defendants then in turn sell the TFT display units to computer manufacturers for use in desktop and laptop monitors. The Defendants also sell the TFT-LCD display units to television set manufacturers for production of flat panel and high definition television sets. Finally, the Defendants sell to other manufacturers which place the TFT-LCD display units in various electronics devices, such as cellular telephones, PDA, game consoles and the like.

40.  The TFT-LCD products industry appears to be competitive, but at a closer look some very peculiar items are noticed. The desktop monitors by IS, HannStar, and Samsung are virtually the same, as a matter of features and abilities, and the price is identical. The examples are taken from a varied range of sizes of monitors for computer uses. Where the type and amount of pixels, refresh speed, connection type are very similar, [and] the price is identical.

41.  The market for TFT-LCD products is not in competition with CRT monitors and plasma screen technology. These technologies are not a suitable replacement for the TFT-LCD based upon price, availability, compatibility, and picture quality. Any graphic intensive presentation that is to be run on a computer, television, and/or personal electronic device needs a TFT-LCD display to have the presentation look and run properly.

42.  The Defendants LG Philips LCD Company Ltd., LG Electronics USA Inc. and Philips Electronics North America Corp. have essentially divided the entire TFT-LCD market between themselves, holding a vast majority of the market described. This is done by sales contract

1  with the manufacturers listed in paragraph 5 above. Additionally, the Defendants have colluded
2  with other TFT-LCD manufacturers to maintain artificially supra-competitive prices for the TFT-
3  LCD products.
4     43.    With regular market forces at work, consumers should not see the exact price and
5  feature between the three competing companies. In reality, that is exactly what occurs.

**B.    Defendants' Market Share and Consumer Purchases**

7     44.    Currently, the Defendants, in conjunction with other manufacturers of TFT-LCD
8  products, control a vast majority of the market for sales of flat panel and high definition TFT-LCD
9  display units.
10    45.    The options for purchasing a monitor, television, cellular telephone, PDA, and/or
11 personal electronic device the Retailer to purchase the TFT-LCD display units from the Defendants
12 and/or to use the patents that are owned by the Defendants. Because Defendants collectively own a
13 vast majority of the patented video technology available, consumers are virtually unable to
14 purchase TFT-LCD display units that do not require a royalty payment and/or purchase payment to
15 Defendants.
16    46.    There are numerous Retailers that either allows people to purchase flat panel
17 monitors, laptop computers, televisions, and/or personal electronic devices. The retailers include
18 Dell, Apple, Hewlett-Packard, Circuit City, Computer Warehouse, and a multitude of others.
19    47.    All Retailers must pay the purchase price with royalties included to the Defendants
20 as the Defendants collectively a vast majority of the for TFT-LCD display units.
21    48.    LG LCD's annual report to the SEC states: "We believe that the primary market for
22 TFT-LCD products today includes notebook computers, desktop monitors and televisions. We
23 believe that the TFT-LCD market will continue to expand as consumers are drawn to replace
24 conventional CRT-based display products with TFT-LCD products due to their superior
25 performance features. We believe that the market for TFT-LCD products will also expand in scope
26 as new applications for this technology continue to be designed and developed."
27    49.    In the relevant Class period, according to LG LCD's SEC annual 2006 report:
28        "Our display panels for notebook computers range from 12.1 inches to
          20.1-inch wide-format in size in a variety of display formats. In 2005, our

      principal products in the notebook computer category were 15.0-inch, 15.4-inch and 17.1-inch panels. Our sales of display panels for notebook computers were (Won)1,739.0 billion, or 28.5% of sales, in 2003, (Won)2,119.1 billion, or 25.5% of sales, in 2004 and (Won)2,113.4 billion (U.S.$2.092.5 million), or 21.0% of sales in 2005. Notebook computer display panels were our principal product from our formation until 2001, when desktop monitor display panels surpassed notebook computer display panels in terms of revenues. 13.3-inch and 14.1-inch panels accounted for a majority of our notebook computer panel sales in 2000 and 2001. Sales volume for 14.1-inch panels, a product which we first introduced to the market in 1997, continued to increase through 2002, while 15.0-inch panels grew at a faster rate and became the largest component in terms of both sales volume and revenues in the category of notebook computer display panels for 2003, 2004 and 2005.

C. **Price Fixing in the TFT-LCD Display Unit and Damages to Consumers**

50. Defendants have conspired and colluded to artificially fix, raise, maintain, and stabilize the royalties charged to consumer of TFT-LCD display units, and thus have caused consumers to pay supra-competitive prices for TFT-LCD display units.

51. The Defendants have continually over the class period introduced flat panel monitors and displays with relatively similar features, and even more astonishing a very similar price. This parallel of the Defendants' features and prices over time has been remarkably well preserved.

52. The Defendants accomplish some of this anticompetitive goal by sales agreements, limiting the manufacturers of their respective products. For example, Defendants are excluding competition and maintaining their monopoly over TFT-LCD by colluding and conspiring to fix, raise, maintain, and/or stabilize prices paid as by manufacturers of the display units based on the Defendants' specifications. The companies who purchase display units as stand alone and/or in preassembled units are divided into several categories. The companies who purchase TFT-LCD display units for laptop computers are Hewlett-Packard, Toshiba, Acer, Dell, and Lenovo. The companies who purchase TFT-LCD display units for Desktop monitors are Dell, LG Electronics, Philips Electronics, Hewlett-Packard, and Apple. The companies who purchase display units for flat screen televisions from the Defendants are Philips Electronics, LG Electronics, Toshiba, Hitachi, and Matsushita. The final category of companies who purchase TFT-LCD display units are for other various applications are LG Innotech, Seiko Instrument, Shinco, Action Technology,

and Noedis. In addition, Defendants are excluding competition and maintaining its monopoly over TFT-LCD display units by colluding and conspiring to fix, raise, maintain, and/or stabilize prices paid by TFT-LCD display unit resellers. TFT-LCD display unit retailers and resellers in turn pass these supra-competitive prices on to consumers.

53. By introducing flat panel monitors and flat panel and high definition televisions and new personal electronic display units with similar features and same prices, the market forces of competition is to a varying degree extinguished, while only the major players reap the benefits. The consumers are hurt by the slowing of innovation and paying supra-competitive prices for the TFT-LCD display units.

54. Because of Defendants' voluntary and intentional acts to artificially fix, raise, maintain, and stabilize royalties, consumers have been forced to pay supra-competitive prices that would not have existed for TFT-LCD display units.

55. Further, because of Defendants' voluntary and intentional acts to artificially fix, raise, maintain, and stabilize royalties, consumers have been forced to pay supra-competitive prices for TFT-LCD units that were preinstalled for the purchasers of preassembled laptop computers, electronic personal devices and flat panel televisions, as well.

**D    Investigations and Information Requests into Price Fixing by Defendants**

56. On December 11, 2006; The Wall Street Journal and Linuxworld.com reported that "On Friday, officials from the Korean Fair Trade Commission visited LG Philips' offices in Seoul as part of an investigation into possible anticompetitive behavior, LG Philips said Monday. In addition, the Japanese Fair Trade Commission issued a notice to LG Philips' offices in Tokyo, and the U.S. Department of Justice issued a subpoena to LG Philips' offices in San Jose, California, the company said."

57. Also on December 11, 2006, the IDG News Service reported "LG Philips, a joint venture of LG Electronics and Philips Electronics, is one of the largest makers of LCD screens. It competes with Samsung Electronics Co. Ltd. and Sony Corp., among others."

58. On December 11, 2006, the U.S. Department of Justice announced subpoenas requesting information from LG LCD regarding anticompetitive practices of the TFT-LCD display

CLASS ACTION COMPLAINT

1 unit industry.

2     59. On December 12, 2006, the U.S. Department of Justice confirmed it is investigating possible anticompetitive practices among the manufacturers of LCD screens.

## PLAINTIFF'S INJURY

    60. Plaintiff and the class members (defined below) have been damaged as a direct, foreseeable, and proximate result of Defendants' misconduct. There are virtually no choices for consumers who require a TFT-LCD display unit other than buying from Retailers who must pay royalties and artificially inflated purchase price to the Defendants because of Defendants' collective market share. Plaintiff and the class members have been forced to pay supra-competitive prices for TFT-LCD display units, which have unjustly enriched Defendants. As a further result of Defendants' misconduct and anti-competitive behavior, Plaintiff and the class members have been forced to pay supra-competitive prices for TFT-LCD display units installed on pre-built computers, flat panel televisions, cellular telephones, PDA's and personal game consoles from retailers.

## CLASS ACTION ALLEGATIONS

    61. The class period is January 1, 1998 to the date of the filing of their complaint.

    62. Plaintiff' brings this action on her own behalf and as a class action pursuant to Rule 2 of the Federal Rules of Civil Procedure on behalf of all members of the following Class ("'Nationwide Class"):

> **All persons and entities residing in the United States, who indirectly purchased from Defendants a TFT-LCD Product from a Retailer in the United States, including pre-built computers, flat panel televisions, cellular telephones, PDA's and personal game consoles containing a TFT-LCD display installed at time of purchase, between January 1, 1998 and the present (the "Class period). Excluded from the class are all federal, state, or local governmental entities, Defendants, and subsidiaries and affiliates of Defendants.**

    63. Alternatively, pursuant to Federal Rule of Civil Procedure 23 and/or California law, Plaintiff, on behalf of herself and all other similarly situated, seeks certification of the following Class ("California Indirect Purchaser Class"):

> **All persons and entities residing in California who indirectly purchased from Defendants a TFT-LCD Product from a Retailer in the United States, including pre-built computers, flat panel televisions, cellular telephones, PDA's and personal game consoles containing a**

12

> **TFT-LCD display installed at time of purchase, between January 1, 1998 and the present (the "Class period). Excluded from the class are all federal, state, or local governmental entities, Defendants, and subsidiaries and affiliates of Defendants.**

64.     The class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the class members are geographically dispersed throughout the United States and/or the State of California. While the exact number of the class members is unknown to Plaintiff at this time, Plaintiff believes, based on the TFT-LCD display units installed and purchased as well as Defendants' market share, that there are hundreds of thousands and/or more members of each proposed Class.

65.     Plaintiff's claims are typical of the claims of the other the class members it seeks to represent. Defendants' illegal and inequitable methods, acts, and trade practices have targeted and affected all the class members in a similar manner, *i.e.*, they have been overpaying for TFT-LCD display units because of the collusion of Defendants in setting prices for purchases of the TFT-LCD units by retailers and assemblers in royalties in the marketplace for TFT-LCD display units, and consumers will continue to pay supra-competitive prices until the conduct of Defendants is ceased. Plaintiff and the class members she seeks to represent have all sustained damages arising out of Defendants' conduct in violation of California Indirect Purchaser and Consumer Protection laws, and the Sherman Antitrust Act, as complained of herein.

66.     Common questions of law and fact exist as to all the class members and predominate over any questions affecting sole or individual class members. Among the questions of law and fact common to the class are:

    a.    Whether Defendants engaged in a contract, combination and/or conspiracy among themselves to fix, maintain and/or stabilize the prices of, and/or allocate the market for TFT-LCD display units sold in the United States;

    b.    Whether Defendants engaged in conduct that violated Section 1 of the Sherman Act;

    c.    Whether Defendants engaged in an unlawful, unfair and/or deceptive contract, combination and/or conspiracy among themselves express and/or implied, to fix, raise, maintain, and/or stabilize prices of TFT-LCD display units sold in and/or

1                 distributed in California:

2       d.     Whether Defendants engaged in conduct that violated antitrust, unfair competition and consumer protection laws of California;

4       e.     Whether Defendants unjustly enriched themselves at the expense of the members of the California Indirect Purchaser Class;

6       f.     Whether the anticompetitive conduct of Defendants caused prices of TFT-LCD display units to be artificially inflated to non-competitive levels;

8       g.     Whether Defendants fraudulently concealed the existence of their unlawful conduct;

9       h.     Whether Plaintiff and the class members are entitled to injunctive relief;

10      i.     The existence and duration of Defendants' conduct; and

11      j.     Whether Plaintiff and other the class members were injured by the conduct of Defendants and, if so, the appropriate class-wide measure of damages.

13    67.    These and other questions of law and fact are common to the class and predominate over any question affecting only individual the class members.

15    68.    Prosecution of separate actions by individual the class members would create the risk of inconsistent and/or varying adjudications with respect to individual the class members that would establish incompatible standards of conduct for Defendants.

18    69.    This Class action is superior to any alternatives for the fair and efficient adjudication of this controversy because:

20       a.     it will avoid a multiplicity of suits and consequent burden on the courts and Defendants;

22       b.     it would be virtually impossible for all Class members to intervene as parties-plaintiff in this action;

24       c.     it will allow numerous individuals with claims too small to adjudicate on an individual basis because of the prohibitive cost of this litigation, to obtain redress for their economic injuries:

27       d.     as a class action it is appropriate for treatment on a fluid recovery basis, which will obviate any manageability problems; and

1  e.  it will provide court oversight of the claims process, once Defendants' liability is adjudicated.

70. Defendants have acted on grounds generally applicable to the class, thereby making final injunctive relief and/or responding declaratory relief appropriate with respect to the class as a whole.

## FRAUDULENT CONCEALMENT

71. The running of any Statute of Limitations has been suspended with respect to any claims which the Plaintiff and other class members have sustained because of the unlawful combination and conspiracy alleged herein and with respect to their rights to injunctive relief by virtue of the federal doctrine of fraudulent concealment. Defendants through various devices and techniques of secrecy affirmatively and fraudulently concealed the existence of the unlawful combination and conspiracy alleged herein.

## CAUSE OF ACTION I
## VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT

72. Plaintiff incorporates by reference all the allegations set forth above.

73. During the class period alleged above, Defendants and the unnamed conspirators entered into and engaged in a contract, combination, and/or conspiracy in an unreasonable restraint of trade to artificially fix, raise, stabilize and/or maintain prices for TFT-LCD products in the United States, in violation of the Section 1 of the Sherman Act, 15 U.S.C. § 1.

74. In furtherance of the alleged conspiracy, Defendants and their unnamed co-conspirators acted to fix the prices of TFT-LCD products: rig the bids for the performance of certain TFT-LCD Product contracts; allocate the markets for TFT-LCD products; and collusively reduce the production of TFT-LCD products.

75. The contract, combination, and/or conspiracy alleged herein has resulted in an agreement and/or concerted action among the Defendants and their unnamed conspirators whereby, because of these actions, prices for TFT-LCD products have been fixed and maintained at artificially high, supra-competitive levels in the United States; price competition for TFT-LCD products has been restrained; and direct and indirect purchasers of TFT-LCD products from the

Defendants and their co-conspirators have been deprived of the benefits of free competition. The alleged contract, combination, and/or conspiracy is a *per se* violation of federal antitrust laws and is at a minimum an unreasonable and unlawful restraint of trade.

76.  Because of Defendants' unlawful conduct, plaintiff and class members have suffered damage by paying supra-competitive prices they would not have had to pay but for the unlawful conduct of Defendants as alleged herein.

77.  Plaintiff and the class members are entitled lo an injunction against Defendants, preventing and restraining the violations alleged herein.

### CAUSE OF ACTION II
### VIOLATION OF CALIFORNIA CARTWRIGHT ACT

78.  Plaintiff incorporates by reference all the allegations set forth above.

79.  Defendants' intentional and purposeful anti-competitive acts that are described above, including but not limited to collusion to set prices and the actual act of price fixing caused and was intended to cause Plaintiff and members of the California Indirect Purchaser Class to pay supra-competitive prices for TFT-LCD products .

80.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the Cartwright Act, California Business and Professions Code § 16700 *et seq*.

81.  Plaintiff and the California Indirect Purchaser Class paid supra competitive, artificially inflated prices for TFT-LCD products.

82.  As a direct and proximate result of Defendants' unlawful conduct, the members of the California Indirect Purchaser Class have been injured in their business and property in that they paid more for TFT-LCD products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

83.  Plaintiff and the California Indirect Purchaser Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial. Plaintiff and California Indirect Purchaser Class seek treble damages and costs of suit, including reasonable attorneys' fees, pursuant to California Business and Professions Code § 16750(a).

## CAUSE OF ACTION III
## VIOLATION OF CALIFORNIA CONSUMER PROTECTION STATUTES

84. Plaintiff incorporates by reference all of the allegations set forth above.

85. The deceptive practices of the Defendants as alleged above included but are not limited to collusion between Defendants in setting prices and actual price fixing with the intended purpose to maintain supra-competitive pricing of TFT-LCD products (all unknown to the general consumer public). Defendants' deceptive and anti-competitive conduct resulted in higher consumer prices for TFT-LCD display units because of supra-competitive pricing by Defendants.

86. Defendants' acts as described above are in violation of California Business & Professions Code § 17200, *et seq*.

87. Plaintiff and the California Indirect Purchaser Class members paid supra competitive, artificially inflated prices for TFT-LCD products.

88. As a direct and proximate result of Defendants' unlawful conduct, the members of the California Indirect Purchaser Class are entitled to restitution of all sums wrongfully paid to Defendants, as well as appropriate injunctive relief and reasonable attorneys' fees.

## CAUSE OF ACTION IV
## UNJUST ENRICHMENT

89. Plaintiff incorporates by reference all of the allegations set forth above.

90. Defendants benefited greatly from overpayments caused directly from their unlawful and anti-competitive acts as described above for purchase price and royalties on TFT-LCD display units. It would be inequitable for Defendants to retain the benefit of these overpayments that were conferred by Plaintiff and the California Indirect Purchaser Class.

91. Plaintiff and the California Indirect Purchaser Class are entitled to the return of these overpayments caused by the willful acts of the Defendants either as damages or restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Declare that this action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class as defined herein and further order notice of such action to all the class members in the most effective practicable manner;

B. Find that the Defendants, by participating in the contract, combination and conspiracy alleged herein,

    i. acted in violation of Section 1 of the Sherman Act identified in Cause of action One;

    ii. acted in violation of the California Cartwright Act and California Business & Professions Code Section 17200 identified in Cause of actions Two and Three;

    iii. were unjustly enriched as set forth in Cause of action Four.

C. Enjoin Defendants from continuing the illegal activities alleged herein;

D. Award Plaintiff and the class members damages as provided by law, including treble damages, and joint and several judgments in favor of Plaintiff and the class as provided by law;

E. Award Plaintiff and the class members restitution, including disgorgement of profits obtained by Defendants because of their acts of unfair competition and their acts of unjust enrichment;

F. Award Plaintiff and the class members pre-judgment and post-judgment interest on the above sums at the highest rate provided by law;

G. Award Plaintiff and the class members their reasonable attorneys' fees and costs as provided by law; and

H. Grant such other and further relief as this Court deems to be necessary, proper just and/or equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38(b), plaintiff respectfully demands a trial by jury for herself and the class on all claims so triable.

DATED: February    , 2007          LAW OFFICES OF LAWRENCE D. NWAJEI

*[signature]*

By: Lawrence D. Nwajei, Esq. (SBN: 180794)
4221 Wilshire Boulevard, Suite 392
Los Angeles, CA. 90010
Telephone:    (323)549-0201
Facsimile:    (323)549-0211


THE EKENNA LAW FIRM, apc.
Chief Nnamdi A. Ekenna, (SBN: 170392)
4221 Wilshire Boulevard, Suite 392
Los Angeles, CA. 90010-3537
Telephone:    (323)549-0201
Facsimile:    (323)549-0211


*Attorneys for Plaintiff*